UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
DAVID DELUCIA, as FUND ADMINISTRATOR OF
THE UNITED BENEFIT FUND; ANDREW TALAMO,
as TRUSTEE OF THE UNITED BENEFIT FUND;        REPORT AND
THOMAS D. AMBROSIO, as TRUSTEE OF THE         RECOMMENDATION
UNITED BENEFIT FUND; and THE UNITED
BENEFIT FUND,                                 10-CV-5705 (ARR)

                         Plaintiffs,

        -against-

MONTGOMERY GATEWAY,

                         Defendant.
-------------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

    This action was commenced on December 9, 2010, by the Fund Administrator of the United Benefit Fund, the Trustees of the United Benefit Fund, and the United Benefit Fund (collectively, "plaintiffs"), a multiemployer employee benefit plan (the "Fund"), against Montgomery Gateway ("defendant"). See Complaint (Dec. 9, 2010) ("Compl.") ¶¶ 4-8, ECF Docket Entry ("D.E.") #1. Plaintiffs bring the action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145, to collect employer contributions and other amounts that defendants allegedly owe to the Fund, which is an employee benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1) and 1002(1)(37). See Compl. ¶¶ 1, 4. The Complaint alleges that defendant was bound to a collective bargaining agreement ("CBA"), as well as a Declaration of Trust (the "Trust Agreement"), that required defendant, as an employer, to make specified contributions to the Fund. See Compl. ¶¶ 9-10. Plaintiffs are intended third-party beneficiaries of the CBA. See

id. ¶ 11.

Although properly served, defendant never answered the Complaint or otherwise appeared in the action and, on April 6, 2011, plaintiffs filed a motion for default judgment with a supporting affidavit of counsel. See Motion for Default Judgment (Apr. 6, 2011) ("Default Judgment Motion"), D.E. #6; Affirmation of Liam L. Castro (Apr. 6, 2011) ("Castro Aff."), D.E. #6-3. On April 14, 2011, after the Clerk of the Court noted defendant's default, see Clerk's Entry of Default (Apr. 11, 2011) ("Entry of Default"), D.E. #9, the Honorable Allyne R. Ross referred plaintiffs' motion for a default judgment to the undersigned magistrate judge for a report and recommendation. See Order Referring Motion for Default Judgment (Apr. 14, 2011) ("Order Referring Motion"), D.E. #10. This Court then ordered plaintiffs to serve and file sworn statements regarding damages, along with supporting documentation, see Order (Apr. 20, 2011) ("4/20/11 Order"), D.E. #11, and plaintiffs complied on April 28, 2011. See Affidavit of David DeLucia (Apr. 28, 2011) ("DeLucia Aff."), D.E. #12. Despite the Court's order, see 4/20/11 Order, defendant never responded.

For the reasons that follow, this Court recommends that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded judgment in the amount of $36,805.16 in damages, prejudgment interest, attorney's fees, and costs.

## BACKGROUND

Defendant was a party to a CBA with Local 917, in effect at all times relevant to this action. See Compl. ¶ 9. Under the terms of the CBA, defendant was obligated to remit contributions to the Fund for all covered employees. See id. ¶ 10. Under the terms of the CBA and the corresponding Trust Agreement, if plaintiffs take legal action to recover any

delinquency, defendant is liable for interest, liquidated damages, and the expenses of collection, including attorney's fees and costs. See id.

From at least October 2007 through and including July 2009, plaintiffs sent defendant a series of invoices regarding fringe benefits owed by defendant. See Castro Aff. ¶ 7; see also Montgomery Gateway Invoice and Receipt Chart, Ex. C to Castro Aff. ("Montgomery Invoice Summary"), D.E. #6-4 at 13. The Fund's Administrator asserts that while the Fund has received $24,960 in contributions from defendant, $28,756 remains outstanding. See DeLucia Aff. ¶¶ 3-4. The Complaint alleges that by letters dated August 26, 2009, April 2 and 22, 2010, and September 14 and 24, 2010, plaintiffs informed defendant that it owed delinquent contributions for the period from July 18, 2008 through and including July 31, 2009, in the amount of $28,756.00, exclusive of interest, liquidated damages, fees and costs. See Compl. ¶ 12; Castro Aff. ¶ 8. The Fund received at least one check for some of the delinquent contributions, but that check failed to clear. See Compl. ¶ 13.

On December 9, 2010, plaintiffs commenced this action against defendant to collect the delinquent contributions and other amounts. Specifically, in addition to the delinquent contributions, plaintiffs request simple interest in the amount of $1,017.96, calculated at the rate set forth in the United States Internal Revenue Code, 26 U.S.C. § 6621; liquidated damages in the amount of $5,751.20; and attorney's fees and costs in the amount of $1,280.00. See Castro Aff. ¶¶ 12-14. The total amount requested is $36,805.16. Plaintiffs do not request interest or liquidated damages accruing through the date of judgment. See generally, e.g., [Proposed] Default Judgment, D.E. #6-2.

Defendant, through its managing agent, was properly served with the Summons and

Complaint in this action on December 16, 2010.  See Affidavit of Service (Dec. 30, 2010), D.E. #2.  Defendant failed to respond or otherwise appear in the action and, on April 6, 2011, plaintiffs moved for a default judgment.  See Default Judgment Motion; Castro Aff.  The Clerk of the Court noted defendant's default on April 11, 2011.  See Entry of Default.  Thereafter, Judge Ross referred the instant motion to the undersigned magistrate judge for a report and recommendation.  See Order Referring Motion.  Plaintiff then submitted an affidavit regarding damages, see DeLucia Aff., but defendant has not responded.

## DISCUSSION

Entry of a default judgment is appropriate provided the pleading properly states a claim upon which relief can be granted.  See, e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116 (FB)(JMA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009) ("Axiom Plumbing").  If the allegations properly state a claim, the plaintiff must then establish damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("Greyhound").  "A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages." Axiom Plumbing, 2009 WL 234348, at *1 (citing Greyhound, 973 F.2d at 158).

## I. LIABILITY

The pleading in this case clearly alleges a breach of the CBA by defendant, and, by extension, states a cause of action under ERISA.  Plaintiffs seeks relief for delinquent contributions owed under the CBA to the Fund, a multiemployer benefit plan.  See Compl. ¶¶ 1, 4, 10, 12.  ERISA requires that employers who are obligated to make contributions to a multiemployer benefit plan pursuant to the terms of a CBA make the specified contributions.

See 29 U.S.C. § 1145; see also, e.g., Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., No. 08-CV-4563 (FB)(SMG), 2010 WL 827901, at *2 (E.D.N.Y. Mar. 4, 2010). ERISA provides federal jurisdiction over claims brought to enforce an employer's obligation to make the required contributions. See 29 U.S.C. § 1132(f).

Here, defendant was bound to the CBA, in effect at all times relevant to this action, which required it to make specified contributions to the Fund. See Compl. ¶¶ 9-10. Defendant failed to make contributions in the amount of $28,756 for the period from July 18, 2008 through and including July 31, 2009. See id. ¶ 12. These uncontested factual allegations are sufficient to establish as a matter of law that defendant is liable for delinquent contributions owed under the CBA.

Plaintiffs thus sufficiently state a claim that defendant has violated the terms of the CBA and, by extension, ERISA. See 29 U.S.C. § 1145. Accordingly, this Court respectfully recommends that defendant be held liable for all damages, as detailed below.

## II. DAMAGES

The Court must next consider the appropriate measure of damages to award plaintiffs. Although a defendant, by defaulting, admits to all well-pleaded allegations pertaining to liability, the plaintiff nevertheless must provide evidence to substantiate its request for damages; it is within the Court's discretion to determine whether that burden has been met. See, e.g., Greyhound, 973 F.2d at 158.

ERISA provides that, upon a finding that an employer violated section 1145 of ERISA, the plan is entitled to judgment in the amount of the delinquent contributions, as well as interest, liquidated damages, reasonable attorney's fees, and costs. See 29 U.S.C. §

1132(g)(2). "Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans is a statutory requirement, and violations of § 1145 are enforceable through civil actions brought under § 1132(g)." Labarbera v. Andrew's Trucking Corp., No. 06 CV 6243(NG)(JMA), 2007 WL 4224631, at *3 (E.D.N.Y. Nov. 26, 2007). "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir. 1990). This section addresses each statutory component of recovery in turn.

### A. Delinquent Contributions

By its default, defendant has admitted its failure to remit contributions on behalf of employees covered by the CBA. Plaintiffs allege that defendant failed to contribute $28,756.00 to the Fund for work covered by the CBA. See DeLucia Aff. ¶¶ 3-8; Montgomery Invoice Summary. In support of their request, plaintiffs submit monthly invoices for August 2008 through June 2009. See Montgomery Invoice Summary; Montgomery Invoices, Ex. B to DeLucia Aff., D.E. #12 at 7-28.[1] The invoices identify by name and member ID each covered employee employed by defendant during that month, along with the corresponding charge owed to the Fund for that employee for that month; the charge was $325.00 per employee for each of eight employees through May 2009, and $344.50 per employee in June 2009. See Montgomery Invoices; DeLucia Aff. ¶ 8. Consequently, defendant owed $2,600.00 to the Fund for each month between August 2008 and May 2009, and owed $2,756 for June 2009.

---

[1] The invoices prepared in one month cover the upcoming month, such that the invoice dated 7/29/08 covers the month of August 2008. See Montgomery Invoices.

The Montgomery Invoice Summary reflects that defendant received invoices for the aforementioned money owed but did not submit checks. See Montgomery Invoice Summary.[2] The total delinquency is therefore $28,756.00 (($2,600.00 x 10) + $2,756.00), which is the amount that plaintiffs request. Defendant has proffered no evidence rebutting plaintiffs' proof of the amounts owed. Accordingly, plaintiffs have met their burden of establishing that defendant violated the CBA and section 1145 of ERISA and is liable to the Fund for $28,756.00 in delinquent contributions. See, e.g., Delucia v. K & E Auto Repair, No. 07-CV-3968 (FB)(TMA), 2009 WL 301916, at *3 (E.D.N.Y. Feb. 3, 2009) (adopting Report and Recommendation calculating damages using monthly invoices listing employees working for defendant and monthly payments due to the relevant benefit funds); Trs. of United Teamsters Fund v. Gidron Oldsmobile & Cadillac LLC, No. 05 Civ.2728 SCR GAY, 2006 WL 2280458, at *3 (S.D.N.Y. Aug. 3, 2006) (same).

**B. Prejudgment Interest**

Section 1132 of ERISA provides that interest on unpaid contributions is calculated "using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). Here, the CBA does not set forth an interest rate, see Castro Aff. ¶ 12, so the relevant rate is that prescribed by section 6621 ("the section 6621 rate").

The section 6621 rate "is calculated by taking the federal short-term rate, which

---

[2] The Summary likewise shows that defendant received an invoice for $2,756.00 for July 2009, which it paid; defendant also remitted one $2,600 check in September 2008, which bounced. See Montgomery Invoice Summary.

changes quarterly, and adding three percentage points. A table calculating the interest rates mandated by § 6621 for each quarter is published by the Internal Revenue Service in a Revenue Ruling." Trs. of Local 8113 I.B.T. Ins. Trust Fund v. J & M Recycling, Inc., No. 05-CV-5131 (ENV)(JMA), 2008 WL 717817, at *3 (E.D.N.Y. Mar. 17, 2008) ("J & M Recycling") (citing 26 U.S.C. § 6621(a)(2)(A), (B)). Courts sometimes use an average of the applicable rates during the relevant time period rather than recalculating interest quarterly. See, e.g., Trs. of the Local I.B.T. Ins. Trust Fund v. Sprint Recycling, Inc., No. 09-CV-04435 (FB)(RER), 2010 WL 3613839, at *3 (E.D.N.Y. Aug. 6, 2010) (court found requested annual rate of 4.45 percent to be reasonable under section 6621 where the federal short-term rate fluctuated between one percent and three percent over the relevant time period); J & M Recycling, 2008 WL 717817, at *3 (applying section 6621, court adds three percentage points to average federal short-term rate – which fluctuated between five percent and seven percent during the period of defendants' delinquency – to arrive at a reasonable interest rate of nine percent); Jacobson v. Artemis Elec. Servs., Inc., No. 04-CV-2567 (ARR)(WP), 2007 WL 3232514, at *5 (E.D.N.Y. Nov. 1, 2007) ("Artemis Elec.") (using an average of six percent where the section 6621 rate fluctuated between four percent and nine percent during the relevant time period). Furthermore, "New York law permits the accrual of pre-judgment interest from a 'single reasonable intermediate date' when damages are incurred over a period of time." Finkel v. Triple A Grp., Inc., 708 F.Supp.2d 277, 287 (E.D.N.Y. 2010) (quoting N.Y. C.P.L.R. § 5001(b)); see also Artemis Elec., 2007 WL 3232514, at *6 (per plaintiff's request, court employed a "simpler methodology of using one accrual date for interest on accumulated payments" – i.e., the due date of the last delinquent payment – rather than

calculating interest from the due date of each individual delinquent payment).

Here, plaintiffs request simple interest on the total amount owed – the last payment of which came due on May 31, 2009, see Montgomery Invoices – at a rate of 3.54 percent, resulting in requested interest of $1,017.96.[3] See Castro Aff. ¶ 12. Plaintiffs determine this rate by adding three percentage points to the March 2011 short-term applicable federal rate ("AFR"), the AFR in effect when plaintiffs filed their Motion for Default Judgment, and the lowest of any AFR in effect over the period in which defendant's payments became due. See id. (citing Internal Revenue Service Revenue Ruling 2011-6, Index of Applicable Federal Rates Rulings, available at http://www.irs.gov/app/picklist/list/federalRates.html (last visited July 5, 2011) (setting forth monthly interest rates).[4] Furthermore, although entitled to do so, plaintiffs do not request interest accruing through the date of entry of final judgment. See, e.g., Laundry, Dry Cleaning Workers & Allied Indus. Health Fund, Unite Here! v. Jung Sun Laundry Grp. Corp., No. 08-CV-2771 (DLI)(RLM), 2009 WL 704723, at *6 (E.D.N.Y. Mar. 16, 2009) (calculating prejudgment interest through the date of entry of final judgment). Plaintiffs thus request an award of interest that is lower than the amount they could have sought

---

[3] Plaintiffs provide no further calculation of interest; although plaintiffs' submissions refer to an exhibit allegedly supporting their request for prejudgment interest, the exhibit cited is the attorney time records. See Castro Aff. ¶ 12; Attorney Billing Records, Ex. D to Castro Aff., D.E. #6-4 at 15-24.

[4] Plaintiff's calculation is erroneously based on the monthly federal short-term AFR set pursuant to 26 U.S.C. § 1274(d); under section 6621, however, the applicable rate is a quarterly federal short-term rate calculated by rounding the monthly section 1274(d) AFR "to the nearest full percent . . . ." 26 U.S.C. § 6621(b)(3). The section 6621 rate was therefore four percent, rather than 3.54 percent. See IRC Section 6621 Table of Underpayment Rates, available at http://www.dol.gov/ebsa/calculator/interestratetables.html (last visited July 5, 2011).

had they applied the higher relevant interest rate for each quarter, rounded to the nearest full percent, compounded the interest, and sought interest through the date of final judgment. As plaintiffs are content to employ a simple methodology, thereby foregoing some potential interest owed, this Court sees no reason to do otherwise. See Delucia v. RTD Strategies, Inc., No. 07-CV-3967 (JS)(ARL), 2009 WL 346972, at *3 (E.D.N.Y. Feb. 4, 2009); see also Artemis Elec., 2007 WL 3232514, at *6.

Accordingly, the Court respectfully recommends adopting plaintiffs' calculation of interest and awarding them $1,017.96 in prejudgment interest.

### C. Liquidated Damages

Both ERISA and the Trust Agreement here provide for liquidated damages in the greater of either the interest on the unpaid contributions, or in an amount not in excess of twenty percent of the unpaid contributions. See 29 U.S.C. § 1132(g)(2)(C); Trust Agreement art. VII § 9, Ex. E to Castro Aff., D.E. #6-5. Plaintiffs request $5,751.20 in liquidated damages, twenty percent of the delinquent contributions. See Castro Aff. ¶ 13. This Court respectfully recommends that plaintiffs be awarded $5,751.20 in liquidated damages.

### D. Attorney's Fees and Costs

Both ERISA and the Trust Agreement provide that in the event the employer fails to make required contributions to the Fund, and the Fund prevails in a legal action, the defendant is liable for reasonable attorney's fees and costs. See 29 U.S.C. § 1132(g)(2)(D); Trust Agreement art. VII § 9. Plaintiffs seek attorney's fees in the amount of $805.00 for services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. See Castro Aff. ¶ 14. In addition, plaintiffs seek reimbursement for costs in the amount of $475.00. See

id.

"In determining the sum due to plaintiffs' attorneys in fees and costs, the Court looks to what a reasonable client would be willing to pay to determine the 'presumptively reasonable fee.'" Masino v. Columbus Constr. Corp., No. 08-CV-1592 (RRM)(CLP), 2009 WL 2566956, at *6 (E.D.N.Y. Aug. 19, 2009) ("Columbus Constr.") (citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008) ("Arbor Hill")). "To calculate the presumptively reasonable fee, a court must determine a reasonable hourly rate for the legal services performed[,]" using factors such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, the amount at stake and awards in similar cases. Id. at *6-7 (quoting Arbor Hill, 522 F.3d at 187 n.3 (listing twelve factors)).

Plaintiffs' request for attorney's fees reflects a total of three hours of work at a rate of $250 per hour and one hour and five minutes at a rate of $50 an hour, for a total of $805. See Attorney Billing Records. The request for costs includes the $350 filing fee and a $125 process server fee. See id. Plaintiffs provide no details about the attorneys or paralegals performing the work. Nonetheless, the attached invoice for services reflects that the work performed at the $250 hourly rate was attributable to an individual identified as "LC," see id., who apparently is Liam Castro, plaintiffs' counsel of record in this case. See Castro Aff. ¶ 1. According to the law firm's website, Mr. Castro graduated from law school in 2003, joined the firm as an associate in 2004, and is a member of the firm's labor and employment group, specializing in, among other things, employee benefits. See http://www.koehler-isaacs.com/attorney/castro.htm (last visited July 5, 2011). "AT," whose work was billed at an

hourly rate of $50, is presumably a paralegal.

Based on the Court's review of the billing records and its familiarity with the number of hours this district has recognized as reasonable for a typical ERISA case resulting in a default judgment, the Court finds that the time spent on this case and the rates charged are not unreasonable, particularly given the modest nature of plaintiffs' fee request. See, e.g., Daniello v. PML Furniture Group of N.J., Ltd., No. 06-CV-5261 (ENV)(RER), 2009 WL 4722650, at *6 (E.D.N.Y. Dec. 9, 2009) ("Daniello") (upholding an hourly rate of $265 for an attorney with ten years of experience and $350 for an attorney with twenty years of experience, and observing that courts in this district have typically awarded $75 an hour for paralegals); Columbus Constr., 2009 WL 2566956, at *7 (collecting cases finding between 17-27 hours reasonable); LaBarbera v. Interstate Dev. Grp., Inc., No. 07-CV-2052 (ARR)(MDG), 2008 WL 858985, at *8 (E.D.N.Y. Mar. 31, 2008) (approving an $80 hourly rate for paralegal work in an ERISA action); Morin v. Nu-Way Plastering, Inc., No. CV 03-405(LDW)(ARL), 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (finding an hourly rate of $200-$250 for senior associates and $200-$300 for partners to be reasonable). Accordingly, the Court respectfully recommends approving plaintiffs' request for fees in the amount of $805 and costs in the amount of $475.

## CONCLUSION

For the foregoing reasons, this Court recommends that plaintiffs be awarded judgment in the sum of $36,805.16 in damages, prejudgment interest, liquidated damages, attorney's fees and costs.

Any objections to the recommendations contained herein must be filed with Judge Ross

on or before **July 25, 2011**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is directed to enter this Report and Recommendation into the ECF system and to transmit copies by Federal Express to defendant at 361 Montgomery Street, Jersey City, NJ 07302.

**SO ORDERED.**

Dated:    **Brooklyn, New York**
           **July 6, 2011**

                                              **ROANNE L. MANN**
                                              **UNITED STATES MAGISTRATE JUDGE**